the results of analyses of alternative approaches to the proposed repository in the Secretary's comprehensive statement of the basis for a site recommendation.

To improve the management of the nuclear waste program and to provide the Congress and the public with accurate information on the repository program, we further recommend that the Secretary of Energy

- reestablish the baseline for the nuclear waste program through the submission of a license application, including incorporating the remaining technical work required to submit the application and the estimated cost and schedule to complete this work, and
- follow the Department's requirements for managing major programs and projects, including a formal change control procedure.

## Agency Comments and Our Evaluation

We provided DOE with a draft of this report for review and comment. DOE disagreed with our report, contending that we did not understand the relevant statutory and regulatory requirements related to a site recommendation. Bechtel, DOE's management contractor, also provided us with a letter asserting unspecified factual and legal inaccuracies in our draft report; however, the company added that it would provide specific comments through DOE. While it was not clear from DOE's comments which ones had come from Bechtel, we are responding to all comments received on the following pages. According to DOE, our misunderstanding of the requirements resulted in a contention in the draft report that it is premature for DOE to make a site recommendation because all the technical work for license application is not complete. (DOE's comments are in app. II.) We agree that the Secretary has the discretion to make such a recommendation at this time; however, we question the prudence and practicality of making such a recommendation at this time, given the express statutory time frames for license application and the significant amount of work remaining to be done for NRC to accept a license application from DOE. Our conclusion is based on the relationship between a site recommendation and DOE's readiness to submit an acceptable license application to NRC, as set out in DOE's siting guidelines and the Nuclear Waste Policy Act. The preamble to DOE's siting guidelines states that DOE expects to use essentially the same data for a site recommendation and a license application. Also, the Nuclear Waste Policy Act states that a presidential site recommendation is to be made if the President considers the site qualified for a license application and sets out a time frame that could be as short as 5 to 8 months from a presidential site recommendation to a license application. This includes

the requirement that the Secretary of Energy submit a license application not later than 90 days following congressional approval of the site. Thus, the statutory time frame is decidedly shorter than the 4-year estimate between site recommendation and license application that was recently proposed by DOE's management contractor.

DOE also pointed out the difference between the decision at hand—determining whether a potential site is licensable—and the licensing by NRC of a repository facility at the site. The latter decision would come at the end of a 3- to 4-year licensing proceeding. In contrast, our report addresses the relationship between a site recommendation and the submission of the license application.

DOE said that our draft report incorrectly states that DOE's siting guidelines require the Secretary, in making a site recommendation, to determine if the site currently complies with NRC's licensing requirements rather than determining if the site is "likely" to meet NRC's radiation protection standards. We agree that the standard in DOE's guidelines is "likely" and have added this language to the report. The report accurately states the relationship between a site recommendation and a license application under the Nuclear Waste Policy Act and the siting guidelines.

In addition, DOE stated that the Nuclear Waste Policy Act charges the Secretary with establishing criteria for determining the suitability of a site for a repository and that the Department's standards (siting guidelines) are the most important legally relevant guidance on the question of whether the Department is ready to make a site recommendation. Our report, DOE said, ignores these standards and instead asserts a standard of our own devising. Contrary to DOE's assertion, we did not evaluate DOE's performance against a standard we devised. We used the Nuclear Waste Policy Act and DOE's standards—that the site is likely to meet NRC's radiation protection standards—for a site suitability recommendation. Moreover, a presidential site recommendation triggers statutory time frames that require DOE to submit a license application to NRC within about 5 to 8 months. Thus, our conclusion regarding whether DOE should make a site recommendation relies on both the relationship between the standards for site recommendation and license application and the statutory time frames. While recommending to the President that the Yucca Mountain site is suitable for a repository is within the discretion of the Secretary of Energy, such a recommendation may be premature because of the large number of technical issues remaining to be resolved before an acceptable license application can be filed with NRC.

DOE also stated that NRC's licensing process is an iterative and continuous process; even the license application is not expected to be "set in concrete." We agree with DOE's statement. The important point, however, is that DOE and NRC have made 293 specific agreements on technical work that DOE will need to complete and incorporate into a license application that would be acceptable to NRC. This also assumes that no new issues surface that would need to be addressed.

DOE said that our draft report emphasized the inventory of issues between DOE and NRC but completely ignored the technical work that has been done over the past 2 decades and the technical groups who have said that DOE's data are sufficient for a site recommendation. We have added information to the report recognizing the body of work that DOE has completed to date and the views of other technical parties mentioned by DOE. As discussed above, however, the central issue is not whether technical parties are of the opinion that DOE has enough information for a site recommendation but the relationship, in statute and regulation, between the site recommendation and the submission of an acceptable license application.

DOE also said our report gives short shrift to NRC's recent "sufficiency letter" that, according to DOE, memorializes NRC's conclusion that the data and analyses existing and under way likely will be sufficient for a license application. Instead, DOE added, our report over-relies on the views of an NRC advisory committee. Our characterization of NRC's sufficiency comments is accurate. NRC did state that the agreements between DOE's and NRC's staffs regarding the collection of additional information provide the basis for concluding that the development of an acceptable license application is achievable; however, NRC conditioned this comment on DOE's successful completion of "significant" additional work prior to a license application. Also, the Nuclear Waste Policy Act does not refer to work "underway," but uses the phrase "seem to be sufficient." Finally, we included the views of NRC's advisory committee because NRC's letter included these views.

In addition, DOE stated that our report prominently emphasizes the views of the Board as requiring the Department to accommodate them before a site determination is made. DOE added that the report does not emphasize that the substance of the Board's criticisms is directed to licensing—not site recommendation. Contrary to DOE's assertion, we did not assert that DOE is "required" to accommodate the Board. We discussed the Board's continuing concerns as outlined in its October 2001 letter to DOE. In that letter, the Board noted that gaps in data and

analyses make the evaluation of DOE's technical bases on whether to recommend the site—not apply for a license—more difficult. Also, we gave the Board's current concerns about DOE's site characterization work, as summarized in its October letter, prominent mention in our report because of the Board's statutory mission to independently evaluate the technical and scientific validity of DOE's investigation of Yucca Mountain.

Finally, DOE said that our statement that delaying a site recommendation decision will have no effect on the timing of the ultimate opening of a repository is contrary to all common sense and experience. We have removed that statement from the report. However, we note that the key factors that bear on opening a repository currently lie in the licensing arena. One such factor is the 4 more years of licensing-related work that Bechtel, in its September 2001 detailed reassessment that proposed a new cost and schedule baseline, estimates would be needed to submit a license application that is acceptable to NRC. In addition, other licensing-related conditions could continue to affect the timetable for developing a repository. For example, Bechtel characterized its reassessment leading to the submission of a license application in January 2006 as a high-risk schedule that does not include any contingency or reserve—in effect, an optimistic schedule. Also, NRC, in its preliminary comments on the sufficiency of site characterization, stated that if DOE adopts a low-temperature repository operating approach, such as described in a recent technical document, then additional information would be needed for a potential license application.

Although we have clarified our discussion of the statutory and regulatory requirements for site recommendation, approval, and licensing, we continue to believe that the Secretary of Energy should consider the timing of this statutory process as he decides when to make a site recommendation to the President. Therefore, while we have modified the language, we have not changed the intent of our recommendation on this matter. DOE did not comment on our findings, conclusions, and recommendations about (1) potential delays on, and alternatives to, its proposed repository design and (2) its management of the nuclear waste program.

## Scope and Methodology

We performed our review at DOE's headquarters in Washington, D.C., and its project office in Las Vegas, Nevada. We also met with officials of NRC in Rockville, Maryland; the Nuclear Waste Technical Review Board in Clarendon, Virginia; and the state of Nevada's Agency for Nuclear Projects in Carson City, Nevada. We conducted our review from April through

December 2001 in accordance with generally accepted government auditing standards. (See app. I for details of our scope and methodology.)

We will send copies of this report to the Secretary of Energy; the Director, Office of Management and Budget; and other interested parties. We will make copies available upon request. If you or you staff have any questions about this report, please call me at (202) 512-3841. Key contributors to this report are listed in appendix III.

Gary L. Jones

(Ms.) Gary L. Jones
Director, Natural Resources
and Environment

# Appendix I: Objectives, Scope, and Methodology

Our objectives for this report were to determine whether (1) the Department of Energy (DOE) has completed the work necessary to support a site recommendation for the development of a repository at Yucca Mountain, and (2) DOE's goal of opening a repository at Yucca Mountain in 2010 is reasonable.

To determine whether DOE, through its Office of Civilian Radioactive Waste Management (OCRWM), has completed the work necessary to support a site recommendation, we discussed with DOE officials the nature and extent of such work and their relationship to the two processes. We also discussed technical issues still outstanding with staff of the Nuclear Waste Technical Review Board, the Board's Chairman, and the staff of the Nuclear Regulatory Commission's (NRC) Office of Nuclear Materials Safety and Safeguards. We analyzed the Board's annual reports and other correspondence to DOE, and summarized issues of concern affecting a site recommendation raised by the Board to DOE. We also reviewed documents obtained from NRC to identify key technical issues affecting readiness to submit an acceptable license application. We visited DOE's Yucca Mountain Site Characterization Office in Las Vegas, Nevada, and interviewed officials in that office on the Department's response to the issues raised by the Board and NRC. We also reviewed project management documents at OCRWM's headquarters and at the project office to identify and characterize how OCRWM's response to the issues raised had been incorporated into the project's work plans and guidance to the office's management contractor for the nuclear waste program. We interviewed officials of Bechtel SAIC Company, LLC, DOE's management contractor, and obtained and analyzed documents prepared by the contractor—such as its September 2001 detailed reassessment of the nuclear waste program—to determine how ongoing and future project work would address these issues, and the subsequent effects on the project schedule and milestones.

To determine whether DOE's goal of opening a repository at Yucca Mountain in 2010 was reasonable, we analyzed OCRWM's reports and project documents. We interviewed officials in OCRWM's headquarters and the project office to determine how total project and program costs had been captured, estimated, and reported to the Congress and the public. We summarized the estimated program costs and associated reasons for the milestones and changes over time. We also determined the procedures used by DOE to revise its cost and schedule estimates for site recommendation and license application, and assessed its use of those procedures.

Our work was conducted from April through December 2001, in accordance with generally accepted government auditing standards.

# Appendix II: Comments From the Department of Energy

The Under Secretary of Energy
Washington, DC 20585

December 5, 2001

The Honorable David M. Walker
Comptroller General
U.S. General Accounting Office
441 G Street, N.W.
Washington, D.C. 20548

Dear Mr. Comptroller General:

The Department has received, by November 28 letter, the General Accounting Office's proposed report, "Nuclear Waste: Technical, Schedule, and Cost Uncertainties on the Yucca Mountain Repository Project." The proposed report addresses the question whether the Department of Energy is ready to make a recommendation to the President regarding whether Yucca Mountain is a suitable site for a potential repository -- a recommendation the Secretary of Energy is called upon to make by the Nuclear Waste Policy Act of 1982.

Let me emphasize at the outset that, press reports to the contrary, the Secretary has not decided on a firm time frame for determining whether or not to recommend Yucca Mountain for this purpose, let alone having decided what the content of such a recommendation might be. That being said, the Department believes the approach the proposed report takes to these issues is profoundly flawed for reasons we explain below.

The proposed report asks, in effect, "why now?" about making a site determination regarding the Yucca Mountain project. What it realistically leaves unanswered is "then when?" should the results of years of scientific inquiry reveal that the Secretary of Energy and the President have enough information to make their determinations on the merits. The Nuclear Waste Policy Act instructs that the Secretary's recommendation is to be made under Department siting guidelines that use the standard that a facility at the site is likely to meet NRC radiation protection standards, and after receiving the conclusion of the NRC whether the information developed and underway will be sufficient for a license application. The NRC recently rendered the sufficiency advice called for by the Act.

Avoidance of a timely decision -- should it be otherwise called for on its merits -- would be a dereliction of duty owed to current and future generations of Americans to pursue with thoughtful expedition the task of making safe all high

2

level nuclear waste. Because the proposed report is a "Brandeis brief" for delay, we must in these comments critically evaluate its major points.

The central contention of the proposed report is that it is premature for the Department to make a site recommendation for Yucca Mountain because the Department has yet to complete all the remaining technical work needed for a license application. This contention reflects a profound lack of understanding of the statutory and regulatory requirements based on an inaccurate depiction of their context.

First, the decision at hand involves determining a potential site, not the licensing of a facility. The construction and operation of a facility – here the repository – would be licensed by the Nuclear Regulatory Commission after site determination. The site itself is not licensed; instead its features may affect design of the facility which is licensed. Thus determining a site must occur before beginning the licensing procedure.

That is why the Nuclear Waste Policy Act specifically envisions two distinct decisions: one by the President, on the advice of the Secretary of Energy, as to whether a hypothetical repository at Yucca Mountain is potentially licensable by the NRC; then one by the NRC as to whether a proposed repository, complete with design specifications, should be allowed to be built and ultimately operate there.

Second, the proposed report misstates, in its brief treatment of them, the Department's siting guidelines as requiring the judgment that the site currently complies with NRC licensing requirements. Not only is this not what the Department's guidelines require, but during the notice and comment rulemaking held on them over a period many years, not a single commenter suggested that the Department adopt such a standard. Rather, consistent with the structure outlined above, the Department's guidelines call for the judgment that a facility at the site is likely to meet NRC radiation protection standards – a predictive judgment that inherently embraces the existence of incompletely resolved potential licensing issues.

Third, because the NWPA charges the Secretary with establishing "criteria to be used to determine the suitability of [a] site for the location of a repository," the Department's standards – in which the NRC has concurred, as the NWPA also requires – provide the most important legally relevant guidance on the question whether the Department is ready to make a site recommendation. Yet the proposed report, despite purporting to answer that question, ignores these standards altogether and instead evaluates the Department's readiness against a standard of its own devising.

Fourth, the NRC licensing process is one that the NRC has described as "iterative" and an "integrated and continuous process." That means that even the license application envisioned by the NWPA was not expected to be set in concrete on its submission but was instead expected to experience refinement and amendment during the licensing process, as was indicated in the NRC regulations in effect when the Nuclear Waste Policy Act was adopted by Congress in 1982.

Fifth, the proposed report affords heavy and central emphasis to the existence of an inventory of issues as to which the Department has agreed with the NRC further to develop for licensing purposes. At the same time it completely ignores the enormous body of scientific and technical work completed regarding the site over the last two decades, including the inventory of some 600 papers cited in the Department's May, 2001 Science and Engineering Report on Yucca Mountain. Nor does the proposed report touch upon – or even acknowledge the existence of – the substantial body of recent, directly relevant analytic literature published by the Department, including the 1998 Viability Assessment, the 2001 Preliminary Site Suitability Evaluation, the 2001 Supplemental Science and Performance Analyses, the 1999 Draft Environmental Impact Statement, and the 2001 Supplement to the Draft EIS.

Much less does the proposed report attempt to evaluate the significance of the unresolved issues as compared with those that have been addressed and resolved in assessing the appropriate timing for a site recommendation. Nor does it address the recent formal conclusions of independent, technically-literate bodies like the U.S. Geological Survey, the International Peer Review Team of the International Atomic Energy Agency and the Organization of Economic Cooperation and Development's Nuclear Energy Agency, and the Energy Committee of the Council on Engineering of the American Society of Mechanical Engineers. In substance each of these has advised the Department that, from the standpoint of the disciplines within its institutional expertise, the information adduced to date is sufficient for a site recommendation.

Sixth, the proposed report gives short shrift to the NRC's recent "sufficiency letter," that memorializes a site determination judgment called for specifically by the Nuclear Waste Policy Act to the effect that the NRC has concluded that the data and analyses existing and underway likely will be sufficient for a license application. Instead the proposed report centers its attention on views attributed to an advisory committee to the NRC, ignoring that it is the NRC, rather than any of its individual or collective advisors, that is responsible under the Nuclear Waste Policy Act (as in all else) for the conduct of its statutory functions.

Seventh, and in a similar vein, the proposed report prominently emphasizes the views of the Nuclear Waste Technical Review Board as requiring the Department to accommodate them before a site determination is to be made. The Department regards the Board's advice as extremely valuable and anticipates continuing to

receive that advice throughout the entirety of the program. Nonetheless, beyond this advisory function, Congress gave the Board no formal role in the siting process when it established this body. And in any event what is not emphasized in the proposed report is that the substance of the Board's criticisms is directed to factors that bear on licensing the facility, not the identity of the site.

Finally, the proposed report asserts that delaying a site recommendation decision will have no effect on the timing of the ultimate opening of a repository. That is contrary to all common sense and experience. Yet this assertion plays a critical role in the structure of the report. Had the report made the only realistic assumption on this question – that delay on site recommendation will indeed lead to delay in opening a repository – it would have had to come to grips with the costs as well as the benefits of delay. For example: high level radioactive waste is currently stored in surface facilities at 129 sites in 39 States around the country, with attendant vulnerabilities. Yet the report gives no weight to the interests of the communities where this waste in located in having a decision on a site for a repository made promptly one way or the other as soon as it can be made responsibly.

We look forward to working with the GAO on this important issue.

Sincerely,

Robert G. Card /ejf

Robert G. Card

# Appendix III: GAO Contact and Staff Acknowledgments

## GAO Contact

Dwayne E. Weigel (202) 512-6876

## Acknowledgments

In addition, Daniel J. Feehan, Robert E. Sanchez, John C. Furutani, Jonathan S. McMurray, Lindy Coe, Doreen S. Feldman, and Susan W. Irwin made key contributions to this report.

## GAO's Mission

The General Accounting Office, the investigative arm of Congress, exists to support Congress in meeting its constitutional responsibilities and to help improve the performance and accountability of the federal government for the American people. GAO examines the use of public funds; evaluates federal programs and policies; and provides analyses, recommendations, and other assistance to help Congress make informed oversight, policy, and funding decisions. GAO's commitment to good government is reflected in its core values of accountability, integrity, and reliability.

## Obtaining Copies of GAO Reports and Testimony

The fastest and easiest way to obtain copies of GAO documents is through the Internet. GAO's Web site (www.gao.gov) contains abstracts and full-text files of current reports and testimony and an expanding archive of older products. The Web site features a search engine to help you locate documents using key words and phrases. You can print these documents in their entirety, including charts and other graphics.

Each day, GAO issues a list of newly released reports, testimony, and correspondence. GAO posts this list, known as "Today's Reports," on its Web site daily. The list contains links to the full-text document files. To have GAO e-mail this list to you every afternoon, go to www.gao.gov and select "Subscribe to daily e-mail alert for newly released products" under the GAO Reports heading.

## Order by Mail or Phone

The first copy of each printed report is free. Additional copies are $2 each. A check or money order should be made out to the Superintendent of Documents. GAO also accepts VISA and Mastercard. Orders for 100 or more copies mailed to a single address are discounted 25 percent. Orders should be sent to:

U.S. General Accounting Office
P.O. Box 37050
Washington, D.C. 20013

| | | |
|---|---|---|
| To order by Phone: | Voice: | (202) 512-6000 |
| | TDD: | (202) 512-2537 |
| | Fax: | (202) 512-6061 |

## Visit GAO's Document Distribution Center

GAO Building
Room 1100, 700 4th Street, NW (corner of 4th and G Streets, NW)
Washington, D.C. 20013

## To Report Fraud, Waste, and Abuse in Federal Programs

Contact:

Web site: www.gao.gov/fraudnet/fraudnet.htm,
E-mail: fraudnet@gao.gov, or
1-800-424-5454 or (202) 512-7470 (automated answering system).

## Public Affairs

Jeff Nelligan, Managing Director, NelliganJ@gao.gov (202) 512-4800
U.S. General Accounting Office, 441 G. Street NW, Room 7149,
Washington, D.C. 20548



PRINTED ON RECYCLED PAPER



Viability Assessment of a Repository at Yucca Mountain

# Overview

U.S. Department of Energy

Office of Civilian Radioactive Waste Management

DOE/RW-0508