# In the United States Court of Federal Claims

No. 98-126 C
(Filed June 28, 2004)

*******************************
YANKEE ATOMIC ELECTRIC COMPANY, Plaintiff,

v.

THE UNITED STATES, Defendant.
*******************************

**ORDER**[1/]

This matter is before the court on:

(1) Defendant's Motion *in Limine* to Exclude Evidence of Future Damages; (2) Defendant's Motion *in Limine* to Exclude Testimony and Evidence Regarding Plaintiff's Request for Pre-Breach Damages and Alternative Restitution Claim and Defendant's Motion to Strike directed to plaintiffs Maine Yankee Atomic Power Company ("Maine Yankee") and Connecticut Yankee Atomic Power Company ("Connecticut Yankee"); and (3) Defendant's Motion *in Limine* to Exclude Testimony and Evidence Regarding Plaintiff's Request for Pre-Breach Damages directed to plaintiff Yankee Atomic Electric Company ("Yankee Atomic").

Future damages

Asserting plaintiffs may not recover future damages for a partial breach, defendant's Motion seeks to exclude evidence of any damages incurred (or projected) after the filings of the Complaints in this matter or, alternatively, projected after the date of trial. Defendant repeatedly insists that plaintiffs have characterized (and have plead) a partial rather than a total breach. Accordingly, defendant asserts, as a partial breach,

---

[1/] This should also be deemed applicable in *Connecticut Yankee v. United States*, No. 98-154 and *Maine Yankee v. United States*, No. 98-474.

plaintiff may only recover for expenditures incurred prior to the filing of the Complaint. Defendant points out that plaintiffs' expenditures to date are indeed significant: more than $109 million of Yankee Atomic's, more than $89 million of Connecticut Yankee's, and more than $84 million of Maine Yankee's "minimum damages" are actual expenditures.

Plaintiffs seek costs it has or will incur to store its spent fuel in the absence of government performance before 2010. There is no possibility that future government performance will ameliorate or eliminate theses costs, plaintiffs assert, and defendant does not deny, as the government has made it clear it will not commence performance prior to 2010.

9 *Corbin on Contracts* §956, cited by defendant, does state that when a plaintiff elects to declare a partial beach, "[i]t has been thought that where there has been no repudiation, the plaintiff can recover damages for his injury <u>up to the date of the writ</u> – that he must treat the breach as only 'partial.'"[2/] Def. Motion, p. 7, emphasis in original. As plaintiffs point out, however, the supplement to that section challenges and dispels that thought. As stated in the 2003 Fall Cumulative Supplement, in commenting on a state court's reliance on Section 956 to deny prospective damages for a partial breach: "[a]ctually, the result [in that case] is not sound. A breach can cause future damages and still be only "partial." It is not true that future damages are inconsistent with a partial breach." p. 550-551.

Recently in *Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639 (2004), the court found that costs were incurred for reasons other than DOE's announced inability to commence performance, and that damages after that date may be the subject of future litigation. In *Indiana Michigan*, no damages were awarded because the court found the utility's expenditures were motivated not by DOE's breach, but by independent business reasons. Accordingly, the court's statement that

---

[2/] Corbin's cited cases for this thought are *Fay v. Guyuon*, 131 Mass. 31 (1881) and *Powers v. Ware*, 21 Mass. (4 Pick.) 106 (1826). In the latter case involving an apprenticeship contract, the court noted that it could not look forward six years and award damages caused by the breach because during that time, the defendant may perform or the apprentice might die which would discharge the defendant. In the former case, the court construed a contract to furnish a home to a person "when he is sober and well-behaved." Damages were assessed on to the date of the writ. Here breach is established and defendant admits it will not commence performance until 2010.

future damages were not available in a claim for partial breach of contract, limiting analysis to damages through the end of the utilities fiscal year, was dicta. *Id.*, at 647-48. *Tennessee Valley Auth. v. United States,* 60 Fed. Cl. 665 (2004) recognized the utilities right to bring subsequent actions for damages it sustains after the upcoming trial in which that utility is seeking damages through its most recently closed fiscal year. Both recent opinions recognized the right of the respective utilities to bring separate actions for damages for future breaches: *Indiana Michigan* indicating future actions should be in accordance with the court's related case rule and *Tennessee Valley* reserving that question for future determination. *Indiana Michigan,* 60 Fed. Cl. 639, 664; *Tennessee Valley,* 60 Fed. Cl. 665, 678, n.17.

A careful reading of treatise language cited by defendant is not inconsistent with plaintiffs' position that evidence of so-called future damages should not be precluded. "A partial breach of contract is a breach where remedial rights provided by law can be substituted by the injured party for only part of the existing contractual rights." *Restatement (First) of Contracts* § 313(2) (1932). Plaintiffs' so-called future damages are for only part of their existing contract rights – the part(s) that have or has already been breached. If the non-breaching party elects to treat a breach as partial, "he is entitled to maintain an action for damages sustained **from breaches** up to the time of the institution of the action, and the judgment does not preclude a further action by him **for a breach** occurring after that date." *Restatement (Second) of Judgments,* § 26 cmt. g, at 241 (1982)(emphasis supplied). Whether labeled as a contract with a series of continuing performances or an installment contract, breaches can be total or partial, and a party may not split its cause of action by attempting to recover both for a total as well as a partial breach. A non-breaching party "may elect to regard the breach as partial, proceed with his own performance, sue for the partial injury, and maintain a second suit in case a further breach occurs." 9 *Corbin on Contracts,* § 946 at 720. Actions for damages for other than a total breach are severable by and attributable to discrete breaches.

Future damages are generally not awarded due to the possibility of windfall to the non-breaching party should the expenses not materialize if the breaching party does perform. Here, given defendant's admission that performance will not commence at the earliest until 2010, there is no risk of windfall; there is no possibility that future government performance will ameliorate or eliminate expenditures caused by defendant's failure to take actions necessary to commence performance in 1998 and perform through 2010. Defendant does not suggest that plaintiffs costs from the time

of trial through 2010 could be recovered in a subsequent action if DOE does perform in 2010.

Damages attributable to the possibility DOE may not commence performance until after 2010 are not being requested in this litigation. Plfs' Op., p. 3. Plaintiffs represent that defendant has never contended that any of plaintiffs' damage claims are speculative because DOE might commence performance before 2010. As at the earliest, DOE will not be prepared to commence performance until 2010, evidence of damages established with reasonable certainty based on the failure to perform until that time whether they are incurred or projected, so long as they are reasonably certain and caused by prior breaches will not be precluded. Furthermore, as raised by defendant in its separate Motion to Strike restitution claims, plaintiffs may seek to declare other than a partial breach and request restitution as a remedy. Accordingly, even if the availability of prospective damages attributable to non-performance to date were precluded for partial breaches, the possibility that plaintiffs may declare, or the court may find, other than a partial breach counsels against precluding the offering of evidence of future damages in this regard. Double recovery is, of course, not permissible; any future expenditures awarded by the court must have been caused by the breach (partial or otherwise) at issue here – the failure of DOE to take actions necessary to commence performance by December 31, 1998 until 2010.

The court is not convinced that at this stage plaintiffs should be precluded from offering testimony, evidence and argument of damages from the DOE's failure to act to commence performance on December 30, 1998 until 2010 – DOE's announced earliest date of commencement of that performance. Damages caused by any failure to commence pick-up after 2010 (as well as any related issues concerning the adequacy of that future performance) would be future damages for future breaches. Damages for future breach are distinguishable from future damages from DOE's prior breach here. Given the nature of the breach here, as well as the suggested magnitude of measures taken to store the waste that defendant was required by contract and statute to accept, to limit any recovery in this action to expenditures either to the date of the filing of the Complaint or the date of trial may well not adequately compensate plaintiffs and restore them to the position they would have been in but for the breach. *Hughes Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1066 (Fed. Cir. 2002). Plaintiffs will not be precluded from offering evidence, testimony and argument on their expenditures or other damages caused by DOE's long-standing

failure to perform. Of course such evidence must have been disclosed in pre-trial proceedings.

Defendant's suggestion that *res judicata* precludes subsequent litigation regarding any future damages plaintiffs may suffer, and plaintiffs' request that the court make it clear that plaintiffs may maintain a subsequent action to recover damages not sought in the present action, are reserved for further consideration.

<u>Election of remedies and pre-breach damages</u>

Defendant seeks to prevent Maine Yankee and Connecticut Yankee from (1) offering testimony, evidence or argument on other than a partial breach of contract; (2) pursuing a claim for restitution; and (3) recovering costs incurred prior to the date of the partial breach. Plaintiffs counter that pleading or arguing alternatively is not improper; they will elect a remedy prior to final judgment; evidence of the utilities' expenditures prior to December 31, 1998 when DOE was to commence performance under the Standard Contract should not be excluded. Plaintiffs also argue defendant's motions present issues more appropriately resolved at trial.

<u>Partial versus total breach and election of remedy</u>

Defendant posits that plaintiffs have plead, and uniformly and consistently pursued, a partial not a total breach of contract; accordingly, plaintiffs elected their remedy for a partial breach and may not change their theory now. Asserting prejudice should any of plaintiff utilities be permitted to argue the government's failure to commence pickup in 1998 and announced inability to do so until at least 2010 is other than a partial breach, defendant points out that plaintiffs' 1998 Complaint alleged a partial not a total breach. A restitution remedy was initially raised in plaintiffs' 2003 Statement of Relevant Facts[3/] in which Connecticut Yankee seeks "payment from DOE . . .of all fees and charges (including interest) that Connecticut Yankee has paid . . . DOE under the Connecticut Yankee Contract" – which is in excess of $41 million. Maine Yankee's restitution claim is $65.5 million. Since DOE's breach, none of the plaintiffs have paid DOE anything. Plaintiffs' restitution claims also include cancellation of their obligation to pay additional fees. Yankee Atomic represents that

[3/]Plaintiffs 2003 Statement of Relevant Facts ("SRF") were submitted to the court in March of 2003 as part of pre-trial submissions.

while it did not explicitly reference the remedy of restitution in its pre-trial submissions, it did set forth material facts supporting that remedy, and may therefore request that remedy at its election prior to judgment.

Defendant has assumed it had a continuing obligation to these plaintiffs, along with all the other utilities under the Standard Contract, and has expended enormous sums in preparing to dispose of this Nation's spent nuclear fuel.

> Yankee asserted that DOE had partially breached the Standard Contract and [] DOE was still obligated to perform its contract obligations to accept Yankee's SNF, effectively affirming the Standard Contract. Since that time, DOE has continued to expend considerable resources in its efforts to complete the processing of licensing and opening a repository that would allow DOE to accept Yankee's SNF. Particularly in light of DOE's continuing work following Yankee's election to pursue only partial breach damages for DOE's January 1998 breach, Yankee cannot now pursue a restitution theory at trial because restitution is inconsistent with Yankee's prior insistence upon DOE's continued performance of the Standard Contract and its election to affirm that contract.

Def's Motion in Connecticut Yankee, p. 22; in Maine Yankee, pp. 22-23.

Also, according to defendant, if plaintiffs are allowed to argue total breach, then anticipatory repudiation could justify an award of pre-breach damages, which are not available for partial breaches; therefore, allowing plaintiffs to allege a total breach would expand damage liability to the defendant's prejudice.[4/]

According to plaintiffs, the Federal Circuit counsels that a non-breaching party does not waive its right to elect its remedy unless a delay in making the election has prejudiced the breaching party, citing *Dow Chem. Co. v. United States*, 226 F.3d 1334, 1346 (Fed. Cir. 2000)(finding no waiver "by continuing to urge the government to perform and by failing to terminate . . . in a reasonable time," because "there is no evidence the government was prejudiced by Dow's delay in terminating the license."). Here, there is no prejudice according to plaintiffs – DOE has proceeded no differently

[4/] In a related motion *in limine* defendant argues future damages for partial breaches are precluded, therefore evidence of the same should not be allowed.

than if any or all of these three utilities had declared a total breach of contract. Plaintiffs do acknowledge the questionable sensibility or possibility they could declare a total breach "in view of Yankee's need to dispose of its spent fuel, DOE's ongoing insistence that it will eventually perform, and the statutory requirement that Yankee be party to a spent fuel contract." Pltfs' Opposition, p. 13, citing 42 U.S.C. § 10222(b). Plaintiffs argue that even if they had sued for total breach (and terminated the contract according to the government), because DOE is statutorily required to construct, license and operate a repository for SNF, and is under contract with dozens of other nuclear utilities, the government would still be incurring the very same costs – so there has been neither prejudice nor detriment.

Plaintiffs also assert that DOE's failure to commence performance in 1998, and admission that performance will commence in 2010 at the earliest is, at least for purposes of responding to defendant's election of remedies argument, a continuing breach, which does not necessarily foreclose future declarations of termination.

In reply, defendant repeats that the Federal Circuit's affirmance of plaintiffs' partial summary judgment that DOE's failure to commence performance was a partial breach, was effectively an "election" given the procedural status of this case. Defendant also argues that it is too late to argue a total breach because: (1) plaintiffs waited five years to identify a restitution claim after defendant had taken extensive discovery, completed its opening pre-trial submissions and rebuttal discovery; and (2) DOE would be prejudiced because it has been spending extraordinary amounts of money since 1998 from the Nuclear Waste Fund ("NWF"). Had plaintiffs and the other Standard Contract holders claimed a total breach of contract back in 1998, at minimum, expenditures could have been reduced. Not all contract holders have declared a total breach.

Plaintiffs may demand relief in the alternative. RCFC 8(c)("A pleading. . . shall contain . . . a demand for judgment for the relief the pleader seeks. Relief in the alternative or of several different types may be demanded.").[5/] While the parties are,

---

[5/]Count I of plaintiffs' Complaint alleges a "Partial Breach of Contract" from which plaintiffs have incurred and are continuing to incur additional costs associated the storage of SNF; Count I alleges breach of the implied duty of good faith and fair dealing; Count III alleges DOE's failures constituted a taking of plaintiffs' property for which just compensation was due; Count IV alleges, that "[b]y requiring Yankee (continued...)

of course, confined to previously disclosed evidence,[6] legal theories are more elastic. Differing legal theories arising from the same set of operative facts are not inappropriate. *Alaska Pulp Corp. Inc. v. United States*, 48 Fed. Cl. 655, 669 (2001).

Plaintiffs must elect their remedy before final judgment. "Where . . . the injured [party] seeks a remedy for his wrong, he should not be deprived of a complete remedy on any theory that he has made an election of remedies . . . He must merely be prevented from getting double compensation for a single harm and from maintaining an unnecessary and vexatious proceedings." *12 Corbin on Contracts* § 1223 (Interim ed. 1979). *13 Williston on Contracts* §39:32 (4th ed. 2002)("when one party commits a material breach of contract, the other party has a choice between two inconsistent rights - he or she can either elect to allege a total breach, . . . or, instead, elect to keep the contract in force, declare the default only a partial breach, and **recover** those damages caused by the partial breach."). Plaintiffs must elect remedies at some time "before final judgment or before enforcement." *3 Dan Dobbs, Law of Remedies* § 12.7(6) (2d ed. 1993).

The court rejects defendant's argument that the Federal Circuit's affirmance of partial summary judgment of breach was effectively an election of remedies by plaintiffs. Defendant cites no authority for this result, which was not a final judgment. Restitution was raised over a year ago and will not be excluded pre-trial. Plaintiffs may not, however, obtain inconsistent judgments. Assuming alternate remedies are presented, at some point prior to final judgment, a final election must be made. *See Wynfield Inns v. Edward Leroux Groups, Inc.*, 896 F.2d 483, 488 (11th Cir. 1990)(noting an election of remedies is generally made after a verdict but prior to judgment.). The court is not prejudging whether or to what extent pre-1998 damages are appropriate or whether restitution may be granted. Neither is the court precluding defendant from arguing prejudice at trial. The court is not prejudging any restitution

[5](...continued)
Atomic to bear costs that are the government's statutory financial responsibility, the government has caused an illegal exaction of those costs from Yankee Atomic." Defendant's motion to dismiss Count IV was previously granted.

[6]Assuming these documents were previously disclosed, amounts paid into the NWF should be relatively straightforward.

evidence, testimony or argument. On this pre-trial record it cannot be concluded that a final election has been made by plaintiffs, or that defendant would be prejudiced if plaintiffs were allowed to offer evidence, testimony and argument in this regard. Alternatively, factual issues as to prejudice counsel against such a determination at this juncture. Defendant's Motion to Strike the alternative restitution "claim" made in plaintiffs' 2003 Statement of Relevant Facts is **denied.**

Pre-breach damages

Defendant also argues that as a partial breach, plaintiffs are precluded from offering evidence of pre-breach damages because there is no legal doctrine of anticipatory partial breach of contract.[7/] "Because there is no such legal doctrine as an anticipatory *partial* breach of contract, Yankee has no basis for seeking damages that precede the actual partial breach . . . . " Def. Motion p. 5. While preventative expenditures prior to a breach to mitigate damages may be proper if the anticipated breach is total; mitigation is not compensable if the anticipated breach is partial according to defendant. Accordingly, defendant reasons, evidence of such should be precluded. The court disagrees.

Before discussing the contractual theories advanced by defendant, the realities of both the facts alleged and the ramifications of the application of defendant's position warrant pause. As recited by the Federal Circuit, in 1994 DOE announced that it could not begin disposal of SNF by January 31, 1998 as required under the Standard Contract because the storage repository it planned to build would not be ready until at least 2010. *See* Notice of Inquiry, 59 Fed. Reg. 27,007, 27,007-08 (1994). In 1995 DOE took the position that it had neither a statutory nor a contractual obligation to accept nuclear waste from utilities in the absence of a repository or an interim storage facility. *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1338 (Fed. Cir. 2000). Following the decision in *Indiana Michigan Power Co. v. United States Department of Energy*, 88 F.3d 1272 (D.C.Cir. 1996) that held the January 31, 1998 deadline was not conditioned on the availability of a repository, DOE notified the utilities that it would not commence pickup of SNF by that deadline. As a result, the utilities had at minimum a good idea that the deadline would not be met in

---

[7/]Defendant states that Yankee Atomic seeks more than $2 million, Maine Yankee more than $10 million, and Connecticut Yankee more than $8 million for costs incurred prior to DOE's partial breach of its Standard Contract. Plaintiffs represent that only Connecticut Yankee and Maine Yankee allege "re-racking" of their spent fuel pool as part of their pre-breach damages.

1994, 1996 at the latest.[8/] Moreover, DOE had an obligation to take actions necessary to be ready to commence performance starting at the end of 1998. Failure to do so may have commenced an earlier partial breach. These are matters for trial.

Plaintiffs proffer that logic and exigencies and basic contract principles dictated that they start dealing with this failure. To limit damages as defendant's suggest would reduce the court's analysis to expenditures only from December 31, 1998 on. The court declines to do so. Consider the ramifications of defendant's position. Should plaintiffs have waited until December 31, 1998 and then decided what to do with their nuclear waste? The court thinks not, and accordingly, will not preclude evidence and argument in this regard.

Recently, in *Tennessee Valley Authority v. United States*, 60 Fed. Cl. 665, 674 (2004), another one of the series of pending SNF cases, the court held that the utility was "justified, indeed obligated, to take steps to minimize its losses in light of DOE's imminent non-performance."

> "Once party has reason to know that performance by the other party will not be forthcoming, he is expected to take such affirmative steps as are appropriate in the circumstances to avoid loss by making substitute arrangements or otherwise." *Restatement (Second) Contract* § 350 cmt. b. *See also Robinson v. United States*, 305 F.3d 1330, 1334 (Fed. Cir. 2002)("Reasonable efforts in the form of affirmative steps are required

to mitigate damages.')(citing *Restatement (Second) Contracts* § 350)). [The utility's] construction of dry storage facilities for spent nuclear fuel . . . must be viewed as an affirmative step toward mitigation to avoid loss for the government's partial, ongoing breach. Accordingly, to the extent that [the utility] is able to show at trial that it has incurred damages as a result of DOE's failure to act upon the proposed DCSs and its failure to collect SNF, [the utility] may recover those damages.

Contract damages are "to place the injured party in as good a position as he or she would have been had the breaching party fully performed." *Hughes*

---

[8/] "Defendant made statements in 1987 and 1989 suggesting that DOE might not meet the 1998 deadline. *See Office of Civilian Radioactive Waste Management Plan Amendment*, June 1987. *See also Report to Congress on Reassessment of the Civilian Radioactive Waste Management Program*, Nov. 1989." *Indiana Michigan*, 60 Fed. Cl. at 649, n.22.

*Communications Galaxy, Inc. v. United States*, 271 F.3d 1060, 1066 (Fed. Cir. 2002) (citing *San Carlos Irrigation & Drainage Dist. v. United States*, 111 F.3d 1557, 1562-63 (Fed. Cir. 1997)). Plaintiffs shall not be precluded from presenting evidence of damages incurred prior DOE's failure to commence acceptance in 1998 and thereafter to continue performance at more than a minimum rate. *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 663-64 (2003). As noted in *Tennessee Valley Authority*, "'the intent of the NWPA and the parties to the Standard Contract was to avoid the construction by utilities of additional at-reactor storage after January 31, 1998.' DOE's failure to perform under the Standard Contract thus has led to the very thing the NWPA and the Standard Contract were designed to forestall., *i.e.*, the construction of dry storage facilities for spent nuclear fuel at nuclear power electricity generating plants throughout the United States." 60 Fed. Cl. at 674, n.10.

In *Indiana Michigan Power Co. v. United States*, 60 Fed. Cl. 639, 648-51, 655-56, 664-65 (2004), the court found that expenses sought as damages were not caused by the government's breach. At trial the utility failed to establish that defendant's breach was the reason any costs, either pre- or post- breach were incurred.[9/] Accordingly, the court's discussion and rejection of any damages incurred before December of 1998 were *dicta*.

The Federal Circuit has recognized that contract principles governing the sale of goods provides "useful guidance in applying general contract principles." *Hughes Communications Galaxy, Inc.*, 271 F.3d at 1066. Damages for partial breach include the costs incurred by the seller in mitigation. "A buyer can obtain cover damages even if it has not cancelled the contract and has accepted a partial delivery . . . ." *24 Williston on Contracts* 4th Ed., § 66.44, pp. 610-613. Damages are not recoverable for damages that should have been foreseen and avoided by reasonable effort without undue risk, expense, or humiliation. *See Restatement (Second) of Contracts* § 350, cmt. b (1981)("'As a general rule, a party cannot recover damages for loss that he could have avoided by *reasonable efforts*.'")(cited in *Robinson v. United States*, 305 F.3d 1330, 1333 (Fed. Cir. 2002)(emphasis in original)).

The court concludes that plaintiffs will not be precluded from presenting evidence of and on pre-breach damages.

---

[9/] *Indiana Michigan* also noted that other SNF cases differ in that dry storage facilities were built because of the breach, and some are no longer operating. 60 Fed. Cl. at 652.

Accordingly, it is hereby **ORDERED** that**:**

(1) Defendant's Motion *in Limine* to Exclude Evidence of Future Damages shall be **DENIED**;

(2) Defendant's Motion *in Limine* to Exclude Testimony and Evidence Regarding Plaintiff's Request for Pre-breach Damages and Alternative Restitution Claim and Defendant's Motion to Strike directed to plaintiffs Maine Yankee Atomic Power Company ("Maine Yankee") and Connecticut Yankee Atomic Power Company ("Connecticut Yankee") shall be **DENIED**; and

(3) Defendant's Motion *in Limine* to Exclude Testimony and Evidence Regarding Plaintiff's Request for Pre-Breach Damages directed to plaintiff Yankee Atomic Electric Company ("Yankee Atomic") shall be **DENIED**.

s/ James F. Merow
James F. Merow
Senior Judge