IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| CONNECTICUT YANKEE ATOMIC POWER COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 98-154C<br>(Senior Judge Merow)<br><br>Filed Electronically Oct. 15, 2004 |

**RESPONSE OF CONNECTICUT TO DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS**

Connecticut Yankee respectfully submits this response to the government's Motion for Leave to File Amended Answer and Counterclaim ("Motion").[1]

## INTRODUCTION

In its Motion, the government argues that it should be permitted to amend its answer to include an affirmative counterclaim and a counterclaim for setoff or recoupment. The first counterclaim seeks recovery, and the second seeks an offset from damages, of the "deferred" or "one-time" fee under Connecticut Yankee's DOE contract. But the government does not claim that the contractual one-time fee is currently due to be paid by Connecticut Yankee. Instead, by the express terms of its proposed counterclaim, the government claims only that "[h]ad DOE begun SNF acceptance . . . in 1998," Connecticut Yankee "would have had been required to pay

[1] This Response should also be deemed applicable to *Maine Yankee v. United States*, No. 98-474C.

the one-time fee . . . ." *See* Proposed First Amended Answer, Affirmative Defenses and Counterclaims ¶ 49 (attached to Motion). That is simply not a proper claim for relief – by the government's own admission, no payment is currently due.

Nor is the government correct to suggest that, if the one-time fee is not offset from damages, an award would place Connecticut Yankee in a better position than if DOE had performed the contract beginning in 1998. Connecticut Yankee is pursuing a claim for partial breach, which means that after a damages award, the spent fuel contract remains executory on both sides. DOE remains obligated to perform, and when it does, Connecticut Yankee must pay the one-time fee. A damages award will compensate only for the partial breach that already has occurred. That such an award will not place Connecticut Yankee in a better position than performance would is shown not only by its outstanding obligation to pay the one-time contractual fee, but also and more concretely by the fact that its spent fuel and high-level radioactive waste remain on-site. To offset the one-time fee, while leaving the spent fuel and HLW in place, would effectively penalize Connecticut Yankee for electing a partial breach remedy. Moreover, as explained by plaintiffs' expert Dr. Wise in uncontroverted testimony, it is economically unnecessary to even consider the one-time fee – much less to offset it – in assessing damages for DOE's partial breach of contract.

The government's counterclaim is meritless and therefore its Motion to amend is futile. For that reason, and because the government's Motion also comes inexcusably late and would significantly prejudice Connecticut Yankee and Maine Yankee, the Motion should be denied.

## DISCUSSION

It is well-established that "a court should deny leave to amend the complaint in circumstances of undue delay, bad faith, dilatory motive on the part of the movant, repeated

failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of amendment, or the futility of amendment." *Forestry Surveys and Data v. United States*, 44 Fed. Cl. 485, 489 (1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Moreover, "the existence of any one of these criteria is sufficient to deny a motion to amend." *Spalding & Son, Inc. v. United States*, 22 Cl. Ct. 678, 680 (1991). Connecticut Yankee demonstrates below that several of these factors are present here and each provides a sufficient basis for denial of the government's Motion.

**1. The government has unduly delayed amendment of its answer.**

The government's assertion that the Federal Circuit has recognized that lateness standing alone is not a sufficient reason to bar amendment of a pleading under RCFC 15(a), *see* Motion at 9, is misleading and wrong. As the government acknowledges early in its Motion, *see* Motion at 8, the case the government initially quotes for that proposition, *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661 (Fed. Cir. 1986), was one in which the Federal Circuit applied Ninth Circuit law. Indeed, throughout its Motion the government relies heavily on Ninth Circuit decisions. *See* Motion at 10-12 (discussing and quoting at length *Howey v. United States*, 481 F.2d 1187 (9th Cir. 1973); *id.* at 12 (discussing *United States v. Pend Oreille Pub. Util. Dist.*, 926 F.2d 1502 (9th Cir. 1991).

The law of the Federal Circuit on this point is directly to the contrary. In *Te-Moak Bands of W. Shoshone Indians of Nev. v. United States*, 948 F.2d 1258 (Fed. Cir. 1991), the Federal Circuit recognized that "[d]elay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings." *Id.* at 1262. *See Alfa Laval Separation, Inc. v. United States*, 47 Fed. Cl. 305, 314 (2000) ("Case law recognizes that delay alone may suffice as a reason for denying a motion for leave to amend."). In *Te-Moak Bands*, the Federal

Circuit determined that the Claims Court abused its discretion in permitting the plaintiffs to file supplemental exceptions to a GSA accounting report under Rule 15(a) because the exceptions "could have been cured by earlier amendment, and they were filed after a period of undue delay." *Id.* at 1261; *see id.* at 1262 ("Petitioner however makes no allegation that the record changed between 1974 and 1982 or that discovery of or investigation into bases for its 1982 water claims was impossible during that period."). Those same factors are present here.

All parties have been aware since before this litigation commenced that Connecticut Yankee has not paid its one-time contractual fee. *See, e.g. Connecticut Yankee Atomic Power Co. v. United States*, 42 Fed. Cl. 448 (1998) (noting that Connecticut Yankee has not yet paid its one-time fee). Indeed, in other spent-fuel litigation, the government raised the issue of failure to pay the one-time fee as an alleged condition precedent to performance as far back as May of 2003. *See Ind. Mich. Power Co. v. United States*, 60 Fed. Cl. 639, 641 n.3 (2004). As this Court explained in *Cupey Bajo Nursing Home, Inc. v. United States*, 36 Fed. Cl. 122, 132 (1996), citing *Te-Moak Bands,* "the Federal Circuit has adopted the rule that a party seeking to amend its complaint after significant delay bears the burden of justifying the delay." *See also Alfa Laval*, 47 Fed. Cl. at 313 (stating that "[w]ithout an offer of justification, delay alone suffices for denial of a motion for leave to amend"). Here, the government's only stated justification for its delay in filing its motion for leave is the fact that it has "realized" that the failures of certain spent-fuel plaintiffs to pay their one-time fees allegedly impacts those plaintiffs' ability to recover damages. *See* Motion at 6. The government's belated "realization" is no justification at all, but even if the Court were to credit the government's "realization" as a justification for its dilatory conduct, that would not -- and could not -- explain the *additional* delay of more than a year between the filing of its Motion for Reconsideration in the *Indiana Michigan* case, predicated on the same failure to

pay the one-time fee, *see* 60 Fed. Cl. at 641 n.3, and the filing of the instant Motion. The government's Motion here is inexcusably late and should be denied.[2]

**2. Amendment of the government's answer would be unfairly prejudicial to Connecticut Yankee.**

Tied in with the government's undue (and inexcusable) delay in moving to amend its Answer is the prejudice that its proposed amendment would cause Connecticut Yankee. As the Federal Circuit has noted, "[t]hese two factors – delay and prejudice – reinforce each other," *Tenneco Resins, Inc. v. Reeves Bros., Inc.*, 752 F.2d 630, 634 (Fed. Cir. 1985), and "'the risk of substantial prejudice increases with the passage of time.'" *Id.* (quoting 6 Wright & Miller, Federal Practice and Procedure § 1488 at 439 (1971)). In the present case, the government's delay in moving to amend its pleadings has resulted in significant prejudice to Connecticut Yankee. By waiting until the middle of trial to bring its Motion (and thus disregarding the Court-ordered process of pretrial disclosure), the government effectively precluded Connecticut Yankee from preparing to litigate the one-time fee issue. Even more prejudicially, the government neglected to even mention that it would be filing its Motion until after the plaintiffs had finished presenting their witnesses and well into the government's affirmative case. *See* Trial Transcript ("TT") at 3897-902. Although plaintiffs' expert Dr. Wise was able to explain on rebuttal – after the government announced its Motion to amend – that it is economically unnecessary to consider the one-time fee when assessing damages, *see* TT at 7465-69, 7480-86, Connecticut Yankee was precluded by the timing of the government's mid-trial filing from developing other evidence pertaining to the proposed counterclaim.

---

[2] At trial government counsel attempted to distinguish the issue it raised in *Indiana Michigan*, *see* Trial Transcript ("TT") at 5119-20, but the Court's description makes clear the basic issue was the same: "The Government asserted last year that plaintiff had not paid its one-time fee,

Footnote continued on next page

The prejudice here is real, as it was in *Spalding & Son, Inc. v. United States*, 22 Cl. Ct. 678, 680-81 (1991). There, the Claims Court denied a plaintiff's motion to amend its complaint "on the eve of trial" because the defendant had "premised the preparation of its defense on the theories and facts pled in the original complaint." (emphasis omitted) The Court also noted in *Spalding & Son* that "[a]n amended complaint at such a late date would . . . require the defendant to substantially restructure its defense, which would impose a grievous burden at this stage of the litigation . . . ." *Id.* at 681. Here, the government essentially seeks to put Connecticut Yankee in a position where it would be required not to restructure an existing defense, but to mount an entirely new one, against a new and novel "claim." Moreover, Connecticut Yankee would be required to do so without the benefit of any pretrial planning and in the face of purported claims that have the potential to offset completely – or even exceed – any recovery of damages. The latter possibility, as the Court noted at trial, *see* TT at 5126-27, "would raise factual issues on the status of the fund, what's been done, what's been authorized by FERC and everything else. . . ." The result is unfairly prejudicial to Connecticut Yankee, given the possible implication of factual issues and particularly where the government's own dilatory conduct is solely responsible for its delay in bringing its Motion. *See First Interstate Bank of Billings v. United States*, 61 F.3d 876, 881-82 (Fed. Cir. 1995) (affirming trial court decision to preclude the government from amending its pleadings to raise a new defense three weeks prior to trial); *Krumme v. Westpoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (affirming district court's order denying motion to amend answer to add counterclaims because "case was near resolution and discovery had been

---

Footnote continued from previous page
which defendant argued was a condition precedent to DOE's obligation to pick up SNF." 60 Fed. Cl. at 641 n.3.

completed" and new counterclaims "would prejudice" plaintiff). For this reason as well, the government's Motion should be denied.

**3. Amendment of the government's answer would be futile.**

Perhaps most importantly, the government's Motion should also be denied because the proposed counterclaim is meritless and an amendment is therefore futile. *See Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403-04 (Fed. Cir. 1989) (denying leave to amend complaint "[o]n the basis of the apparent futility of . . . proposed amendment") (emphasis omitted). *See also Herndon v. United States*, 36 Fed. Cl. 198, 202 (1996) (concluding that plaintiff's motion to amend complaint was futile because it "would not change the outcome" of litigation). As explained in *Slovacek v. United States*, 40 Fed. Cl. 828, 834 (1998), "a court may deny a motion to amend a complaint if the amendment would be futile, because, for example, the claim added by the amendment could not withstand a motion to dismiss."

That is the situation here, as noted at the outset. First, by the terms of the DOE contract, the one-time fee to be paid by Connecticut Yankee is not yet due and owing. The government cannot – and does not – allege otherwise. Connecticut Yankee elected to make its one-time fee payment pursuant to option (b) of Article VIII, section B.1 of its contract. That provision requires the Purchaser to make the one-time fee payment at "*anytime* prior to the first delivery." (emphasis added). Connecticut Yankee acknowledges that it will be obligated to pay the one-time fee if and when the government performs. But because DOE has not yet performed, there can be no dispute – and there is no dispute – that the one-time fee is not yet due to be paid.[3]

---

[3] The cases cited in the government's Motion to establish its right to offset debts, *see* Motion at 14-15, are therefore distinguishable. In *United States v. Munsey Trust Co.*, 332 U.S. 234 (1947), for example, the government had retained percentages of progress payments owed to a contractor. The GAO deducted an "undisputed" damages award owing to the government and paid over the remainder. *See id.* at 237-38. Similarly, in *Madden v. United States*, 371 F.2d 469

Footnote continued on next page

The government also suggests, but ultimately acknowledges it cannot properly claim, that payment of the one-time fee is a "condition" to DOE's performance. *See* Motion at 6, 13-14. Such a claim is precluded by *Ind. Mich. Power Co. v. United States*, 88 F.3d 1272, 1276 (D.C. Cir. 1996), which held that DOE's obligation to perform not later than January 31, 1998 was "without qualification or condition." Any claim that the one-time fee is a condition to DOE's performance is also precluded by the Federal Circuit's decision in these very cases, which affirmed this Court's conclusion that DOE breached the Yankee contracts by failing to perform a contractual obligation that was "due." *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1343 (Fed. Cir. 2000). The government, begrudgingly, accepts this controlling case law. *See* Motion at 6 ("given the Federal Circuit's decision regarding the breach in these two cases, we are not seeking *at this point* to raise that issue here as a challenge to the breach finding") (emphasis added).

Second, as also noted at the outset, there is no merit to the government's claim that failure to offset the one-time fee from damages will place Connecticut Yankee in a better position than if DOE had performed. In addition to the fact that Connecticut Yankee remains obligated to pay the one-time fee, and that spent fuel and HLW remain on its site – hardly a windfall position, or even a favorable one – it is significant that trial of this case has concluded, and the only evidence regarding the impact of payment of the one-time fee on damages was provided by plaintiffs' expert Dr. Wise, who testified that "from a damages perspective, the payment of the fees, whenever it occurs, in either world, is a neutral item," and "not something

Footnote continued from previous page
(Ct. Cl. 1967), it was established that the plaintiff against whom an offset was assessed had defaulted on a loan from the Small Business Administration and also had an existing tax deficiency. *Id.* at 470-72.

that has to be taken into account in the damages calculation." TT at 7466:10-14. *See also* Exhibit P2043.5 (explaining "[t]he payment of the pre-1983 fee is neutral to damages," because "[r]egardless of when it occurs, the present values in the breach and non-breach worlds are the same"); TT at 7469:7-9 (Wise) (same). Notably, the government offered no testimony or other evidence whatsoever on the effect of payment of the one-time fee (or failure to pay that fee) on Connecticut Yankee's damages claim. *See* TT at 6376:4-11. Indeed, the government's damages witness, Mr. Johnson, testified that he "did not consider" the issue, TT at 6839:14. Thus, Mr. Johnson's position was fully consistent with Dr. Wise's – neither witness considered the one-time fee in evaluating the claimed damages in this case, and neither witness testified that the one-time fee should be considered in determining damages.

Because the economic impact on Connecticut Yankee (and on the government) is the same whether the one-time fee is paid now or at some point after 2010, *see* TT at 7468:23 – 7469:9, and given the acknowledged obligation that Connecticut Yankee has to pay the fee if and when DOE performs, there is absolutely no reason in law, logic or the trial record for applying the fee now as an offset. In fact, to do so would be entirely unreasonable and unfair. It would force Connecticut Yankee to pay for performance that DOE has not provided, and may never provide, while also requiring Connecticut Yankee to shoulder the continuing burden and cost of on-site storage of spent fuel and HLW, perhaps indefinitely. Offsetting and thereby extinguishing the one-time fee also would wrongly (and prejudicially) remove the only practical incentive that DOE has for eventually fulfilling its contract obligations and removing Connecticut Yankee's fuel.

Finally, the government's Motion should be denied as futile because to offset a damages award by the amount of the one-time fee would violate both § 302(a)(3) of the NWPA and the

Eleventh Circuit's holding in *Alabama Power Co. v. Dep't of Energy*, 307 F.3d 1300 (11th Cir. 2002). Section 302(a)(3) of the NWPA, 42 U.S.C. § 10222(a)(3), provides that the one-time fee "shall be paid" into the Nuclear Waste Fund. This Court, which has previously recognized that statutory directive in this case, *Connecticut Yankee Atomic Power Co. v. United States*, 42 Fed. Cl. 448, 449 (1998), *aff'd*, 225 F.3d 1336 (Fed. Cir. 2000), cannot properly relieve Connecticut Yankee of the obligation to pay the one-time fee, when due, into the Nuclear Waste Fund.

The court in *Alabama Power* enforced that same statutory requirement. It held that a settlement agreement offsetting the fees a spent fuel plaintiff otherwise would be required to pay into the Nuclear Waste Fund was contrary to the NWPA, because such an offset "was tantamount to an expenditure of NWF dollars on what the offset was effectively funding – namely, Exelon's continued interim storage costs incurred as a result of the [DOE]'s breach." *Id.* at 1311-12. As the Eleventh Circuit explained, the NWPA permits expenditures from the Nuclear Waste Fund "only for purposes of radioactive waste disposal activities," *see* 42 U.S.C. § 10222(d), and paying interim storage costs caused by DOE's breach "is the *opposite* of 'disposing' of the waste." *Id.* at 1313. In the present case, any damages offset made pursuant to the government's proposed counterclaim would likewise violate the NWPA, because using Waste Fund dollars to reduce the government's damages liability is also an unauthorized use.

At trial government counsel suggested that the mandatory payment requirements of NWPA § 302(a)(3) and of *Alabama Power* could be avoided by first awarding damages owed to Connecticut Yankee, and then directing that from those damages the amount of the one-time fee be paid to the Nuclear Waste Fund. TT at 5122-24. But that would not be an offset – it would be the forced *payment* in full of a fee that is not yet due, for services that have not yet been performed. Moreover, even if counsel's suggestion complied with the contractual provision

governing when payment of the one-time fee is due, and it does not, the prospect of a circular trail of damages money from and then back to the U.S. Treasury simply underscores that the entire endeavor is futile and unnecessary. Why bother with the proposed counterclaim if the net result is payments back and forth between Connecticut Yankee and the Treasury that provide no economic advantage at all to the government? And the lack of any advantage to the government is both clear and undisputed, because as Dr. Wise explained, regardless of when Connecticut Yankee pays the one-time fee, the government will receive payments having *precisely* the same present value. TT at 7469:7-9. At the same time, Connecticut Yankee unquestionably would be prejudiced by the forced payment of a $100 million-plus contractual fee that is not yet due.

The government's proposed counterclaim is both meritless and futile, and should be denied.

## CONCLUSION

In summary, several independent grounds exist for denial of the government's Motion. The government waited to bring its Motion to add its counterclaims until after the close of the plaintiffs' affirmative case and has offered no legitimate explanation for this unwarranted delay. To grant the government's Motion under such circumstances would be unfairly prejudicial to Connecticut Yankee. Most importantly, the government cannot prevail on the merits of its counterclaims and its Motion is therefore futile. Although each of these factors provides an independent basis for the rejection of the government's Motion, taken together they command that result. The government's Motion should be denied.

Respectfully submitted

Date: October 15, 2004

s/ Jerry Stouck________
JERRY STOUCK
Spriggs & Hollingsworth
1350 I Street, N.W., Ninth Floor
Washington, D.C. 20005
Tel. (202) 898-5800
Fax (202) 682-1639

Counsel for Plaintiff,
YANKEE ATOMIC ELECTRIC COMPANY

Of Counsel:
Robert L. Shapiro
Peter J. Skalaban, Jr.
SPRIGGS & HOLLINGSWORTH