IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| CONNECTICUT YANKEE ATOMIC POWER COMPANY, | ) | |
| Plaintiff, | ) | |
| | ) | No. 98-154C |
| v. | ) | (Senior Judge Merow) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM, AND DEFENDANT'S ALTERNATIVE MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS PURSUANT TO RCFC 13(f) AND 15(b)

Defendant, the United States, respectfully submits this reply to "Response Of Connecticut Yankee To Defendant's Motion For Leave To File Answer And Counterclaims," which was filed on September 24, 2004.[1] For the reasons set forth in our motion for leave to file an amended answer and counterclaim, dated August 5, 2004, and as further explained below, the Court, pursuant to RCFC 15(a), should permit the Government to file its amended answer and counterclaim. In addition, as an additional basis for granting leave to the Government to file its amended answer and counterclaim, the Government respectfully requests that the Court grant leave pursuant to RCFC 13(f) and 15(b) to amend its answer to assert its previously identified counterclaims.

[1] The Government requests that this motion also be deemed applicable to Maine Yankee Atomic Power Co. v. United States, No. 98-474C.

## DISCUSSION

### I. PURSUANT TO RCFC 15(a), THE COURT SHOULD GRANT THE GOVERNMENT LEAVE TO FILE ITS AMENDED ANSWER AND COUNTERCLAIM

#### A. The Plaintiffs' Complaints Regarding "Undue Delay" Do Not Preclude The Court's Ability To Grant The Government's Motion To Amend

As we discussed in our August 5, 2004 motion, RCFC 15(a) provides that a party may amend its pleadings by leave of the court and that "leave shall be freely given when justice so requires," and this Court has held that "leave to amend should be freely permitted absent sufficient explicit reasons indicating that it should be denied." St. Paul Fire and Marine Ins. Co. v. United States, 31 Fed. Cl. 151, 153 (1994) (quoting State of Alaska v. United States, 15 Cl. Ct. 276, 279 (1988)). The Supreme Court has identified its standard for evaluating amendments pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, which mirrors RCFC 15(a):

> Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a [party] may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962), quoted in St. Paul Fire and Marine, 31 Fed. Cl. at 153.

In response to our motion to amend, the plaintiffs cite to the United States Court of Appeals for the Federal Circuit's decision in Te-Moak Bands of Western Shoshone Indians of Nevada v. United States, 948 F.2d 1258 (Fed. Cir. 1991), to argue that delay alone, regardless of

whether the delay causes any prejudice, is sufficient to justify denial of a motion to amend. Response, at 3-4. We acknowledge that, in Te-Moak, under the heading "Undue Delay," the Federal Circuit recognized in a case in which the plaintiffs had made multiple amendments to their pleadings over the course of many years, that "[d]elay alone, even without a demonstration of prejudice, has thus been sufficient grounds to deny amendment of pleadings." Te-Moak, 948 F.2d at 1262. However, the Federal Circuit also recognized, in the next sentence of its decision, that "[i]n some cases it has been held important in determining the propriety of the motion for leave to amend whether prejudice would result to the nonmoving party." Id. The Court held that, "[t]hus, with the passage of time and acceptance of multiple earlier amendments, a point is reached when the party seeking to amend must justify that request by more than invocation of the concept of the rule's liberality." Id. at 1263.[2]

The Court of Claims has recognized that the mere fact that an amendment is offered late in a case, or even after trial, does not preclude amendment of a pleading and approved amendments to pleadings to include a new defense raised four months after the trial court's opinion and findings of fact were issued:

> Plaintiff vehemently opposes defendant's right to raise the accord and satisfaction defense. It was filed as defendant's fourth affirmative defense almost four months after the Commissioner's Opinion and Findings of Fact. Plaintiff maintains that Rules 19(b), 20(b) and 20(h) of the Rules of the court provide that an affirmative defense such as accord and satisfaction must be asserted in the responsive pleading or else waived forever. However, our Rule 22 provides for a liberal amendment of

[2] At least one district court has interpreted the Te-Moak decision as focusing "on the undue delay, standing alone, and the effect of undue delay in terms of risk of prejudice to the *non-movant*." Engineered Prods. Co. v. Donaldson Co., 225 F. Supp. 1069, 1085 (N.D. Iowa 2002) (italics in original).

> pleadings. We feel that the facts of this case justified allowing defendant to file its fourth affirmative defense.

Brock & Blevins Co. v. United States, 170 Ct. Cl. 52, 59, 343 F.2d 951, 955 (1965); see Senza-Gel Corp. v. Seiffhart, 803 F.2d 661, 666 (Fed. Cir. 1986) (applying Ninth Circuit law) ("[t]he mere fact that an amendment is offered late in the case is . . . not enough to bar it; amendments may be offered at trial, or even after reversal and remand," emphasis added) (quoting Howey v. United States, 481 F.2d 1187, 1191 n.3 (9th Cir. 1973), & 3 J. Moore, Moore's Federal Practice § 15.08, 0.835))).

Here, the Government has not made "multiple" amendments to its answer in these cases in the past. In fact, our motion for leave to amend is the first and only amendment sought in this litigation. Further, at the trial of this matter and in our motion, we explained the reasons that we only belatedly recognized the correlation of Connecticut Yankee Atomic Power Company's ("CYA's") and Maine Yankee Atomic Power Company's ("MYA's") one-time fee payments, their right to recover damages without payment of those fees, and the implications in a partial breach case of the Department of Energy's announcement prior to 1998 that it would not be able to begin spent nuclear fuel ("SNF") acceptance by January 31, 1998. See, e.g., Tr. 3897-3901, 5119-5123. Although it would have been preferable had the Government earlier understood the effect of all of the various legal doctrines applicable to these cases, we unfortunately did not. Nevertheless, as will be discussed below, the plaintiffs have not established any prejudice from this delay, and the effect of denying leave to amend will potentially complicate future proceedings and future contract performance. Given that these two cases are among the first to proceed to trial and a final resolution, it would be beneficial for all parties to resolve as many of

the numerous issues that will be presented in many of the other spent nuclear fuel cases as possible, so that they can be presented to the appellate court (if necessary and appropriate). In light of the absence of prejudice to the plaintiffs, the novel nature of many of the issues in these cases, and the desirability of a complete resolution of issues in these cases, leave to amend should be granted.

The plaintiffs also assert that the Government unduly delayed filing its motion to amend after recognizing that it had a counterclaim against CYA and MYA because it had previously a motion regarding the one-time fee issue in Indiana Michigan Power Co. v. United States, No. 98-486C (Fed. Cl.). Response, at 4-5. However, as discussed during the trial of this matter, see Tr. 5119-20, the contract holder in Indiana Michigan had elected to pay its one-time fee in accordance with "Option 1," 10 C.F.R. § 961.11, Art. VIII.B.2(a), which required the contract holder to pay its one-time fee "prorated evenly over forty (40) quarters" prior to the commencement of SNF acceptance from that contract holder. Accordingly, if the plaintiff in Indiana Michigan had wanted DOE to begin SNF acceptance by January 31, 1998, it would have had to have begun its one-time fee payment in 1988. Because DOE did not make any announcement that it would not be able to begin SNF acceptance by 1998 until well after that 1988 date, it was clear that the plaintiff in Indiana Michigan could not claim that it had a basis for failing to begin those fee payments back in 1988. Here, however, both CYA and MYA elected to pay their one-time fees under "Option 2," 10 C.F.R. § 961.11, Art. VIII.B.2(b), "in the form of a single payment anytime prior to the first delivery, as reflected in the DOE approved delivery commitment schedule . . . ." As we recognized more about the distinctions in the law between partial and total breaches in these cases, we realized that CYA's and MYA's failures to

pay their one-time fees under Option 2 had the same effect as the failure of the contract holders that elected Option 1, regardless of any DOE announcements regarding the SNF commencement acceptance date. Although it certainly would have been preferable had we understood the interaction of the various legal theories and scenarios earlier than we did, our errors are the result of the complicated legal and factual scenarios that these cases involve. As we acknowledged during trial, our motion to amend has been filed late in these proceedings, and we understand that it would have been preferable had we understood these legal ramifications earlier than we did. However, the plaintiffs' implication that we must have understood all of the legal ramifications of the one-time fee issues as they applied to CYA and MYA at an earlier time is not supported by the plaintiffs' reference to Indiana Michigan.

B. Neither CYA Nor MYA Has Identified Any Prejudice From The Timing Of The Government's Motion

"The single most important factor" in evaluating a motion to amend "is whether prejudice would result to the nonmovant." Senza-Gel, 803 F.2d at 666 (applying Ninth Circuit law); see 6 C. Wright, A. Miller & M. Kane, Federal Practice & Procedure § 1487, at 613-14 ("if the court is persuaded that no prejudice will accrue, the amendment should be allowed"). In their response, CYA and MYA allege that "[a]mendment of the government's answer would be unfairly prejudicial to" CYA and MYA. They assert that the timing of the Government's motion "effectively precluded [them] from preparing to litigate the one-time fee issue" and that, although they had their expert, Dr. Wise, "opine" that it was "economically unnecessary to consider the one-time fee issue when assessing damages," they were "precluded by the timing of the

government's mid-trial filing from developing other evidence pertaining to the proposed counterclaim." Response, at 5.

Neither CYA nor MYA has identified any actual prejudice from the timing of the Government's motion. Most importantly, the Government's motion deals with a matter of contract interpretation, a purely legal matter. As will be discussed below, the provisions of the Standard Contract define whether, and when, the one-time fee payment must be made. The only "facts" upon which the Government's arguments depend are not in dispute. Neither CYA nor MYA contest that they have not yet paid their one-time fees, and, in fact, both are seeking as damages in this litigation the costs that they allegedly will incur to invest and manage the funds that they will use to pay the one-time fee at some point in the future. During the trial of this matter, CYA and MYA elicited testimony from their own witnesses explaining that neither CYA nor MYA has yet paid its one-time fee pursuant to the Standard Contract. Further, the plaintiffs did not object to the Government's introduction of an exhibit establishing the principal amount of the one-time fee that each of them owed. DX802; see Tr. 7853-54, 7864-66. As established in our August 5, 2004 motion, given that these facts are not in dispute, the remainder of the Government's position regarding CYA's and MYA's need to pay their one-time fees presents a purely legal issue. That is, the issue of whether CYA and MYA would have been required under the terms of the Standard Contract to pay their one-time fees before or when DOE began accepting their SNF is a legal determination based upon an interpretation of the plain language of the Standard Contract. See Government Sys. Advisors, Inc. v. United States, 847 F.2d 811, 812 n.1 (Fed. Cir. 1988) (contract interpretation is a matter of law and, therefore, is generally

amenable to summary judgment); P.J. Maffei Bldg. Wrecking v. United States, 732 F.2d 913, 916 (Fed. Cir. 1984) (same).

In their response to the Government's motion, CYA and MYA did not allege, much less demonstrate, that they needed discovery to determine whether their one-time fees are due before DOE begins accepting their SNF under their Standard Contracts. Further, although they assert in conclusory fashion that they would have developed other evidence regarding the one-time fee if the Government had raised its motion earlier, neither CYA nor MYA provides any explanation of what that "evidence" would have been, beyond the irrelevant testimony of Dr. Wise regarding the "economics" of the fee payment.[3] A mere recitation that prejudice will result from the amendment, without an actual showing of prejudice, is insufficient to justify denial of leave to amend. Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 644 F.2d 690, 694 (8th Cir. 1981). In fact, given that CYA and MYA are seeking to charge the Government in this litigation for the management fees associated with investing the one-time fees that they have elected not to pay, they certainly cannot contend that they were unaware of the implications of the one-time fee issue in this litigation or that they did not investigate the propriety of the withholding of the one-time fee. CYA and MYA have failed to establish any real prejudice from the timing of the Government's motion.

In fact, the absence of prejudice to CYA and MYA is clear from the fact that, even if the Court were to deny the Government's motion to amend its answer to assert these counterclaims, the Government potentially could still be able to offset the one-time fee from any judgment

[3] Dr. Wise's testimony was unrelated to the meaning and interpretation of the fee provisions of the Standard Contract.

awarded to CYA or MYA. Pursuant to 31 U.S.C. § 3728, the Department of the Treasury is entitled to setoff debts owed to the Government against any judgment issued against the Government. The Government may exercise its right to setoff even though it has not reduced its claim to judgment. I.M.L. Freight, Inc. v. United States, 639 F.2d 676, 678 (Ct. Cl. 1980); Mega Constr. Co. v. United States, 29 Fed. Cl. 396, 445 (1993); Mazama Timber Products, Inc. v. United States, 6 Cl. Ct. 87, 89 (1984). In fact, the setoff "may be effected pending resolution of the controversy." Mega Constr., 29 Fed. Cl. at 445. This Court's predecessor, the Court of Claims, recognized that a debt need not even be formally "determined, liquidated, or assessed" when the Government withholds monies from the contractor's payments. Southeastern Airways Corp. v. United States, 673 F.2d 368, 379 (Ct. Cl. 1982). Nevertheless, if the setoff issue is not resolved in this litigation, CYA and MYA may seek judicial resolution of the setoff if the Government effects it pursuant to 31 U.S.C. § 3728. Given that the Government could potentially effect the setoff after entry of judgment, CYA and MYA cannot establish prejudice from the amendment to the Government's answer now. In fact, amendment of the Government's answer to deal with the setoff issue prior to final judgment will eliminate the need for a post-judgment setoff or further judicial proceedings in response to a post-judgment setoff. However, if the Government must attempt to effect a setoff after judgment in this case, future litigation regarding this issue is likely to occur, supporting resolution of this issue now.

Finally, denial of the Government's motion could cause substantial prejudice to the Government. "[E]ven where some prejudice to the adverse party would result if the motion to amend were granted, that prejudice must be balanced against the hardship to the moving party if it is denied." Buder, 644 F.2d at 694 (emphasis added); see Koston v. Secretary of Health &

Human Services, 23 Cl. Ct. 597, 601 (1991) (prejudice to movant if the motion to amend is denied may also be considered), aff'd on other grounds, 974 F.2d 157 (Fed. Cir. 1992); Engineered Prods. Co. v. Donaldson Co., 225 F. Supp. 2d 1069, 1085 (N.D. Iowa 2002) ("the Federal Circuit Court of Appeals recognized that a court must consider the risk of prejudice to the *movant* of denial of leave to amend," italics in original) (citing Cornwall v. U.S. Construction Mfg., Inc., 800 F.2d 250, 252-53 (Fed. Cir. 1986)). Here, if the Government had an obligation to pay CYA and MYA damages for its failure to begin accepting SNF in 1998, but could not recoup the one-time fees that CYA and MYA would had to have paid to obtain that acceptance, it would create complete confusion in the future over when, if ever, CYA and MYA will actually pay their fees. If, when DOE arrives to accept CYA's and MYA's SNF in the future, CYA and MYA then say that they will not or cannot pay the one-time fee, DOE would not have any obligation to accept their SNF until the fee was paid. Yet, the Government potentially will already have paid CYA and MYA damages allegedly arising from DOE's failure to accept that SNF at an earlier date and, presumably, for its continuing failure to accept it. Any failure by CYA and MYA to pay their one-time fee at some future date would put into question any damages award that CYA and MYA had previously obtained, as it would raise questions about whether CYA or MYA would have or could have paid their one-time fee had DOE timely arrived for SNF acceptance. The uncertainty in the fee payment process and in the relationship between an award of damages and SNF acceptance obligations that would be created without recoupment of fees through this litigation would be prejudicial to the Government.

Further, CYA and MYA are both seeking as damages in this litigation the costs that they allegedly will incur to manage and invent the monies that they purportedly one day will pay to

DOE. Obviously, if CYA and MYA pay their one-time fees now, there will be no need for this Court to consider this element of "damage." In addition, if the fees are paid, there will be no need for CYA or MYA to continue to incur these investment and management "costs" or, importantly, for the Government potentially to have to reimburse CYA and MYA for these "costs." Any damages award to CYA and MYA that would require the Government to pay the costs of CYA's and MYA's investing and management efforts would be highly prejudicial to the Government. For these reasons, the Government's motion to amend should be granted.

C. The Government's Counterclaims Are Not Futile

The plaintiffs also assert that the Government's motion to amend should be denied as futile. Response, at 7-11. The plaintiffs are wrong. As we explained in our motion to amend, "[o]ne of the basic principles of contract damages is that 'damages for breach of contract shall place the wronged party in as good a position as it would have been in, had the breaching party fully performed its obligation.'" Bluebonnet Sav. Bank, F.S.B. v. United States, 339 F.3d 1341, 1344-45 (Fed. Cir. 2003) (quoting Massachusetts Bay Transp. Auth. v. United States, 129 F.3d 1226, 1232 (Fed. Cir.1997)). "Thus, the non-breaching party should not be placed in a better position through the award of damages than if there had been no breach." Id. (citing White v. Delta Constr. Int'l, Inc., 285 F.3d 1040, 1043 (Fed. Cir. 2002)). "[T]he non-breaching party 'should on no account get more than would have accrued if the contract had been performed.'" White, 285 F.3d at 1043 (quoting DPJ Co. v. FDIC, 30 F.3d 247, 250 (1st Cir.1994)).

As demonstrated in our motion to amend, before DOE ever began accepting CYA's or MYA's SNF, CYA and MYA would have been required to have paid their one-time fees pursuant to Article VIII.B.2(b) of the Standard Contract. The amount of CYA's fee was originally

$48,726,402.11, DX 802, but, with interest calculated in accordance with the terms of Article VIII(B)(2), now exceeds $153,430,144. Similarly, the amount of MYA's fee was originally $50,393,966.02, DX 802, but, with interest calculated in accordance with the terms of Article VIII(B)(2), now exceeds $159,058,215. Had DOE begun accepting CYA's SNF in 1998 and MYA's SNF in 1999, in accordance with CYA's and MYA's approved DCSs, or at any other time that CYA and MYA allege, CYA and MYA first would have had to pay the entirety of their one-time fees, including accrued interest. Because CYA and MYA now seek damages for DOE's failure to begin accepting their SNF and seek to be placed in the financial position in which they allegedly would have been had DOE timely begun SNF acceptance, and to the extent that the Court determines that CYA and MYA are entitled to damages for a partial breach of the Standard Contract, DOE should be entitled to recover the amount of CYA's and MYA's unpaid one-time fee (plus the interest calculated from April 7, 1983, as identified in Article VIII.B.2(b) of the Standard Contract) before the Court requires DOE to pay any damages for DOE's delay in performance – that is, the Court should require the satisfaction of the condition to DOE's obligation to accept CYA's and MYA's SNF before awarding CYA and MYA damages. If the Court were to require DOE to pay damages for failing to begin acceptance of CYA's and MYA's SNF, but failed to allow DOE to recover the monies that it would have received had it timely begun SNF acceptance, the Court would place CYA and MYA in a better position than they would have been in had there been no breach. See Bluebonnet Savings Bank, 339 F.3d at 1345.

The plaintiffs are seeking to have the Government pay them substantial damages for not satisfying its obligations to begin SNF acceptance in 1998, while seeking to defer their own corresponding obligations to pay their one-time fees. Obviously, since they are investing the

funds that they assert they will use to pay the Government at some point in the future, they believe that they can make more money investing those funds (with the Government paying for the management costs through the Court's award of damages) than they will have to pay under the low interest-rate provision contained in the Standard Contract if they defer their fee payment. Given that, in the "would have been world" to which the plaintiffs repeatedly cite, the plaintiffs "would have" had to pay their one-time fees before DOE accepted any of their SNF, they should not be placed in a better position than they would have been had no breach occurred, simultaneously obtaining an award of damages and a right to retain the one-time fee payments that they "would have" had to have paid to obtain performance.[4]

## II. THE COURT SHOULD PERMIT THE GOVERNMENT TO ADD ITS COUNTERCLAIMS PURSUANT TO RCFC 13(f)

Aside from the provisions of RCFC 15(a), RCFC 13(f) provides another basis for permitting the Government's requested amendment. RCFC 13(f) provides that, when "justice requires," the Court has the discretion to "set up [a] counterclaim by amendment" if the defendant has failed timely to set up the counterclaim:

> When the defendant fails to set up a counterclaim through oversight, inadvertence or excusable neglect, or when justice requires, it may by leave of court set up the counterclaim by amendment.

[4] The plaintiffs also discuss the effect of the United States Court of Appeals for the Eleventh Circuit's decision in Alabama Power Co. v. Department of Energy, 307 F.3d 1300 (11th Cir. 2002), upon the Government's ability to recoup funds here for the Nuclear Waste Fund. Response, at 9-11. As discussed at trial, the Alabama Power decision is irrelevant to the Government's entitlement to receipt of the one-time fee prior to acceptance of SNF from a contract holder and has no effect upon the Government's ability to recover that money. See Tr. 5122-25.

RCFC 13(f) (emphasis added). "Generally, courts have been quite liberal about granting leave to amend under Rule 13(f)." 6 C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1430, at 213 (2d ed. 1990). "Because of the great flexibility inherent in Rule 13(f), precise guidelines are difficult to formulate." Id. at 214. "The usual judicial practice is to examine each case on its facts and to deny leave to amend only when the delay is inexcusable, or when the pleader has displayed a lack of good faith, or when the omitted counterclaim can be left to an independent action, or when it is totally lacking in merit." Id. at 214, 217-18.

Nevertheless, "[t]he clause in Rule 13(f) permitting amendments 'when justice requires' is especially flexible and enables the court to exercise its discretion and permit amendment whenever it seems desirable to do so." Id. at 219; see Budd Co. v. Travelers Indem. Co., 820 F.2d 787, 791-92 (6th Cir. 1987) (quoting same). "In exercising its discretion under Rule 13(f), the district court must balance 'the equities, including whether the non-moving party will be prejudiced, whether additional discovery will be required, and whether the court's docket will be strained.'" Budd, 820 F.2d at 792 (quoting Barnes Group, Inc. v. C & C Products, Inc., 716 F.2d 1023, 1035 n.35 (4th Cir.1983)). "Courts appear particularly hesitant to deny amendment, even at late stages in the proceedings, when the interest in resolving all related issues militates in favor of such a result and no prejudice is demonstrated." Budd, 820 F.2d at 792; see T.J. Stevenson & Co. v. 81,193 Bags of Flour, 629 F.2d 338, 369-71 (5th Cir. 1980) (district court did not abuse its discretion in allowing counterclaim to be added after close of all evidence when nonmoving party was not prejudiced); Spartan Grain & Mill Co. v. Ayers, 517 F.2d 214, 220-21 (5th Cir. 1975) (district court abused its discretion in refusing to allow amendment when no prejudice or delay would have resulted); Smith Contracting Corp. v. Trojan Construction Co., 192 F.2d 234, 235-36

(10th Cir. 1951) (district court abused discretion in failing to allow amendment when facts were easily ascertainable and no prejudice would result to the nonmoving party).

In Louisville Trust Co. v. Glenn, 66 F. Supp. 872 (W.D. Ky. 1946), the district court used Rule 13(f) to justify the addition of a counterclaim subsequent to trial by an amendment to conform to the evidence. Id. at 874, cited in 6C. Wright, A. Miller, & M. Kane, supra, § 1430, at 219 & 222. In the Louisville Trust case, the district court explained that the purpose of the rule was, to the extent possible, to avoid multiplicity of suits and to dispose of the whole matter in controversy in one action:

> All of the issues involved in those years have been decided in this same action. It is the purpose of Rule 13 to avoid multiplicity of suits and to dispose of the whole matter in controversy in one action. The adjustment of defendant's demand by counterclaim rather than by independent suit is favored by the rule. All claims of the Government and all claims of the defendant involved in the specific years that the Government has chosen to litigate, should be settled in this one suit. In the opinion of the Court both justice and reason require that the amended answer, counterclaim and cross-petition be permitted to be filed.

Id. at 874; see Singer Mfg. Co. .v Shepard, 13 F.R.D. 509, 510 (S.D.N.Y. 1952) (even though delay in seeking amendment to add counterclaim was not excusable neglect, allowing amendment when justice seemed to require amendment).

Here, as previously explained, the plaintiffs' one-time fee payments are intricately intertwined with DOE's acceptance obligations and the plaintiffs' damages claims. If CYA and MYA do not pay their one-time fees in conjunction with a damages award, great uncertainty will be created regarding when, and whether, CYA and MYA will ever pay those fees. Further, if, when DOE arrives to begin SNF acceptance, CYA or MYA will not or cannot pay their one-time

fees, it will put into question the justification for any damage award to either plaintiff, given that their non-payment of the one-time fee would be a defense to any obligation to accept their SNF. In addition, because CYA and MYA are seeking as damages in this litigation the costs associated with managing and investing the funds allegedly being reserved for the one-time fee payment, resolution of the one-time fee payment issue will effectively resolve this damages claim. Finally, because the issues of CYA's and MYA's payment of their one-time fee are intricately intertwined with CYA's and MYA's damages claims, including their own alleged damages relating to the non-payment of those fees, the purposes of RCFC 13(f) support resolution of all of the one-time fee issues in a single proceeding. For these reasons, the Court should grant leave to amend pursuant to RCFC 13(f).

## III. THE COURT SHOULD PERMIT THE GOVERNMENT TO ADD ITS COUNTERCLAIMS BY AMENDING THE PLEADINGS TO CONFORM TO THE EVIDENCE PURSUANT TO RCFC 15(b)

RCFC 15(b), like Rule 15(b) of the Federal Rules of Civil Procedure, permits the Court to amend the pleadings to conform to the evidence at trial:

> When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment . . . . If evidence is objected to at trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense on the merits. . . .

RCFC 15(b). "Amendments to conform to the evidence are desirable because they bring the pleadings in line with the issues that actually were developed at trial; this is permitted even though the material inserted by amendment was not presented by the pleadings as originally drawn." 6A C. Wright, A. Miller, & M. Kane, Federal Practice & Procedure § 1493, at 15 (2d ed. 1990). "[C]ourts should interpret subdivision (b) liberally and permit an amendment whenever doing so will effectuate the underlying purpose of the rule." Id. § 1491, at 6; see Laningham v. United States, 5 Cl. Ct. 146, 156 (1984) ("courts have generally accorded Rule 15(b) a liberal construction, so as to enable controversies to be tried on the merits").

"Subdivision (b) describes two procedures for what commonly are referred to as amendments to conform to the evidence." 6A C. Wright, A. Miller, & M. Kane, supra, § 1491, at 4. "Even though the two procedures described in Rule 15(b) are quite different in their operation and application, both are designed 'to avoid the tyranny of formalism' . . . and to avoid the necessity of a new trial . . . ." Id. at 4-5. The first "provides that when an issue not embraced by the pleadings is tried with the express or implied consent of the parties, it is to be treated in all respects as if it had been raised by the pleadings." Id. at 4. "[C]onsent generally is found when evidence is introduced without objection, or when the party opposing the motion to amend actually produced evidence bearing on the new issue." Id. § 1493, at 24 & 28.

The second "authorizes the court to permit the pleadings to be amended when evidence is objected to at trial as not being within the framework of the pleadings." Id. § 1491, at 4. Under the second scenario, "[w]hen the introduction of evidence relating to the defense is objected to, an amendment will be permitted unless the objecting party demonstrates that he has been prejudiced and cannot be protected by a continuance or by imposing conditions on the admission

of the evidence." Id. § 1492, at 10. "To justify the exclusion of evidence, the rule contemplates that the objecting party must be put to some serious disadvantage; it is not enough that the party advances an imagined grievance or seeks to protect some tactical advantage." Id. § 1495, at 57; see id. at 59 ("Rule 15(b) requires that the party opposing the amendment be seriously prejudiced in the presentation of the action or defense on the merits"). "Absent a showing of this character, the court should grant leave to amend and allow evidence on the newly raised issue to be introduced." Id. at 59-60.

"Rule 15(b) applies to defenses as well as to affirmative claims and the criteria for allowing amendments is the same in both contexts." Id. § 1492, at 9-10. "In the case of an unpleaded counterclaim or setoff, Rule 13(f) governs whether the court will permit its formal addition to the action during the trial." Id. at 12. However, "a number of cases have relied on Rule 15(b) to permit defendant to amend the pleadings after judgment to add a counterclaim or setoff that actually has been litigated or simply to treat the pleadings as if they had been amended earlier." Id. "When appropriate, the court may direct the amendment of the pleadings on its own." Id. § 1493, at 18.

Here, as previously discussed, CYA and MYA raised the issue of the one-time fee in their own case, seeking as damages the costs that they allegedly will incur to invest and manage the funds which they allegedly will use to pay the one-time fee at some point in the future. Resolution of the Government's counterclaims will potentially resolve the plaintiffs' damages claims. CYA and MYA acknowledge that they presented a witness, Dr. Wise, to discuss the reasons that the fee payment is not yet required. Response, at 2 & 5. Further, they admitted at trial the only "facts" relevant to this issue: the amount of the principal of the one-time fees that

CYA and MYA owe. See DX 802; Tr. 7853-54, 7864-66. Although they assert that they will be "prejudiced" by the amendment, they have not, as previously discussed, identified any actual prejudice from the Court's consideration of a purely legal issue, having failed to identify any discovery or testimony that could potentially have any effect upon the proper interpretation of the Standard Contract. For these reasons, the Court should grant leave to amend pursuant to RCFC 15(b).

## CONCLUSION

For these reasons, we respectfully request the Court to grant this request for leave to amend our answer and to order that the amended answer which accompanied our August 5, 2004 motion be filed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

KEVIN B. CRAWFORD
JOHN C. EKMAN
STEPHEN FINN
HEIDE L. HERRMANN
R. ALAN MILLER
SONIA M. ORFIELD
RUSSELL A. SHULTIS
MARIAN L. SULLIVAN
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, D.C. 20530

October 15, 2004

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 307-2503

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 15th day of October 2004, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIM, AND DEFENDANT'S ALTERNATIVE MOTION FOR LEAVE TO FILE AMENDED ANSWER AND COUNTERCLAIMS PURSUANT TO RCFC 13(f) AND 15(b)" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Harold D. Lester, Jr.